IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**District Judge R. Brooke Jackson**

Civil Action No. 18-cv-03275-RBJ

GORDON JOHNSTON,

     Applicant,

v.

MATTHEW HANSEN, Warden of Sterling Correctional Facility, and
PHILIP J. WEISER, Attorney General of the State of Colorado,

     Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

     The matter before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1), filed *pro se* by Applicant Gordon Johnston.   Respondents have filed an Answer (ECF No. 20) and Mr. Johnston has filed a Reply (ECF No. 21).   After considering the parties' filings, along with the state court record, the Court will deny the Application.

**I.     Background**

     In November of 2011, Mr. Johnston was convicted by a jury in Arapahoe County District Court Case No. 2011CR504 of one count of distribution of a schedule I controlled substance, one count of distribution of a schedule I substance (25 to 450 grams), and conspiracy to distribute a schedule I controlled substance.   (ECF Nos. 11-

1 at 13; 11-5 at 2).   He then was adjudicated a habitual criminal.   (ECF Nos. 11-1 at 11; 11-5 at 2).

In Mr. Johnston's direct appeal proceeding, the Colorado Court of Appeals summarized the relevant facts as follows:

> The evidence showed that Johnston twice sold the schedule I controlled substance 3,4-methylenedioxymethamphetamine (MDMA) to a confidential police informant in the course of controlled-buy operations. During each transaction, the police supplied the informant with marked currency and outfitted him with a wire. The informant met a middleman, Matthew Engle, at Engle's car in a retail center parking lot. Johnston was present in his own car. The informant gave Engle the money, which Engle took to Johnston's car and exchanged for MDMA. Engle then returned to his own car and gave the drugs to the informant. Between the two buys, Johnston sold 400 tablets of MDMA (100 tablets weighing 26.56 grams in the first transaction, and 300 tablets weighing 75.99 grams in the second).
>
> The informant and Engle testified against Johnston at trial consistent with the prosecution's allegations. Johnston's theory of defense was that Engle had used Johnston as a decoy while Engle himself sold the MDMA directly to the informant. Johnston was convicted as charged and subsequently adjudged to be a habitual criminal. *See* Ch. 200, sec. 12, § 18-18-405(3)(a)(I), 2004 Colo. Sess. Laws 637; Ch. 424, sec. 3, § 18-18-405(2)(a)(I)(A), 2003 Colo. Sess. Laws 2683; Ch. 306, sec. 1, § 18-18-405(1)(a), 2002 Colo. Sess. Laws 1270; 18-1.3-801, C.R.S. 2014. He received a controlling sentence of sixty-four years in prison, which was mandated by statute. *See* § 18-1.3-801(2)(a)(I)(A).

*People v. Gordon Lamay Johnston*, No. 12CA0893 (Colo. App. February 12, 2015) (unpublished) (ECF No. 11-5 at 2-3).   The judgment of conviction was affirmed on direct appeal on February 12, 2015 (ECF No. 11-5), and Mr. Johnston petitioned for a writ of certiorari in the Colorado Supreme Court, which was denied (ECF No. 11-6).

Mr. Johnston then filed a motion for sentence reconsideration and a postconviction motion pursuant to Colo. R. Crim. P. 35(c), both of which were denied by the district court.   (ECF Nos. 11-1 at 8-9; 11-2).   Mr. Johnston appealed the denial of the Rule 35(c) motion, and the Colorado Court of Appeals affirmed the denial.   (ECF No. 11-9). The Colorado Supreme Court denied Mr. Johnston's subsequent petition for certiorari review.   (ECF No. 11-10).

Mr. Johnston initiated this § 2254 proceeding on December 20, 2018, asserting four claims in his Application.   (ECF No. 1).   In their Pre-Answer Response, Respondents did not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. § 2244(d).   (ECF No. 11 at 7).   Respondents argued, however, that certain of Mr. Johnston's claims were procedurally defaulted in the state courts and, therefore, those claims were barred from merits review by this Court.   (*Id.* at 7-12).

In a March 19, 2019, Order to Dismiss in Part and for Answer, this Court determined that claims three and four were properly exhausted in the state courts, and dismissed claims one and two as procedurally defaulted.   (ECF No. 15).   Respondents were ordered to file an Answer, and Mr. Johnston was afforded the opportunity to file a Reply.   (*Id.*).   Respondents filed an Answer on May 17, 2019 (ECF No. 20), and Mr. Johnston filed a Reply on June 14, 2019 (ECF No. 21).   Upon entry of the March 19, 2019, Order to Dismiss in Part and for Answer (ECF No. 15), the following two claims remain at issue in this action:

> Claim Three:   Mr. Johnston's claim that his "Sixth Amendment rights to effective assistance of counsel were

violated" by his trial counsel's performance (ECF No. 1 at
15);

Claim Four:   Mr. Johnston's claim that his "Sixth
Amendment rights were violated by his direct appellate
counsel who provided ineffective assistance" (*id.* at 18).

## II.    Legal Standards

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), provides that a writ of habeas corpus may not be issued

with respect to any claim that was adjudicated on the merits in state court unless the

state court adjudication:

(1)   resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal
law, as determined by the Supreme Court of the United
States; or

(2)   resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Review under the AEDPA serves only as "a guard against

extreme malfunctions in the state criminal justice systems, not a substitute for ordinary

error correction through appeal."   *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)

(quotation marks and citation omitted).   Mr. Johnston bears the burden of proof under §

2254(d).   *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The threshold question under § 2254(d)(1) is whether Mr. Johnston seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.   *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).   Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly

established federal law, that is the end of the Court's inquiry under § 2254(d)(1).   *See*

*id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.   A state

court decision is contrary to clearly established federal law if the state court (a) "applies

a rule that contradicts the governing law set forth in [Supreme Court] cases," or (b)

"confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

precedent."   *Id.* at 405-06.   "The word 'contrary' is commonly understood to mean

'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"   *Id.* at

406 (citation omitted).   The state appellate court is not required to cite to the clearly

established Supreme Court case law, or even be aware of it, so long as nothing in the

state appellate court decision contradicts that law.   *Early v. Packer,* 537 U.S. 3, 8

(2002).

"A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts." *Williams*, 529 U.S. at 407-08. The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006). Furthermore,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 ("even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Johnston bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "As the plain terms of the statute indicate," review under § 2254(d)(2) is limited to the evidence contained in the state court record. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

Finally, the Court's analysis is not complete even if Mr. Johnston demonstrates the existence of a constitutional violation. "Unless the error is a structural defect in the

trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), . . . ." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) ("For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.") (internal quotation marks omitted); *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* any time it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

## III.    Analysis

### A.    Claim Three

Mr. Johnston contends in Claim Three that his trial counsel was ineffective. Specifically, he argues that counsel performed deficiently by failing to: (1) move to

suppress drug evidence recovered from a third party, (2) object to the jury reviewing audiotape evidence in the jury room, (3) object to prosecutorial misconduct regarding the alleged retraction of a plea offer, and (4) seek the recusal of the prosecutor's office regarding the plea offer retraction.   (ECF No. 1 at 15-18).[1]

It was clearly established when Mr. Johnston was convicted that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel.   *See Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, to establish that counsel was ineffective, Mr. Johnston must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.   *See id.* at 687.   If Mr. Johnston fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.   *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential."   *Id.* at 689.   There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."   *Id.*   It is Mr. Johnston's burden to overcome this presumption by showing that the alleged errors by his counsel were not sound strategy under the circumstances.   *See id.*

In the context of federal habeas corpus review under § 2254(d), a state prisoner

---

1  Respondents' Answer also addresses Mr. Johnston's argument on appeal that his trial counsel was ineffective because he should have interviewed the co-defendant and a confidential informant.   (ECF No. 11-9 at 5-6; ECF No. 20 at 18-20).   However, Mr. Johnston has not raised or even mentioned this argument in his Application or Reply brief in the present habeas corpus action.   (*See* ECF Nos. 1, 21). Therefore, the Court does not address it herein.   *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

"faces an even greater challenge." *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, we defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (internal quotation marks and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id.* Furthermore,

> [f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard.

*Id.* (citations and internal quotation marks omitted).

Under the prejudice prong, Mr. Johnston must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Mr. Johnston has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Johnston. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

### (1) Failure to Move to Suppress Drug Evidence

Mr. Johnston contends that his trial counsel was ineffective for failing to seek the

suppression of evidence of the drugs on the basis that the drugs were recovered from a third party, rather than directly from Mr. Johnston himself.   (ECF No. 1 at 16).   The Colorado Court of Appeals applied the *Strickland* test (*see* ECF No. 11-9 at 3-5) and rejected this ineffective assistance of counsel claim because Mr. Johnston failed to demonstrate deficient performance.   The Court of Appeals reasoned as follows:

> We next reject defendant's argument that the district court should have held a hearing to evaluate whether trial counsel was ineffective for failing to seek suppression of the drugs.
>
> Even assuming that the factual allegations in defendant's postconviction motion are true, we conclude that defendant has failed to allege facts establishing that counsel's performance fell below an objective standard of reasonableness. See *Dunlap [v. People]*, 173 P.3d [1054] at 1062 [Colo. App. 2007]; *Ardolino [v. People]*, 69 P.3d [73] at 77 [Colo. 2003].
>
> Defendant appears to argue that the drugs should not have been admitted as evidence against him because the drugs were recovered from a third party, and not directly from defendant. Defendant alleges that counsel was ineffective for not making such an argument. But the acquisition of incriminating evidence from a third party does not make such evidence inadmissible, so long as it was properly authenticated, *see generally* CRE 901, and defendant has nowhere alleged improper authentication. Instead, defendant's argument about inadmissibility of the drug evidence goes only to the weight to be given to the evidence at trial. *See* CRE 402 (relevant evidence is generally admissible); *cf. People v. Nhan Dao Van*, 681 P.2d 932, 936 (Colo. 1984) (evidence relating to accuracy of chemical test conducted by toxicologist affected weight to be given to witness's testimony, not its admissibility). Defendant's argument does not establish that the evidence would have been inadmissible at trial to prove his commission of the charged acts. We therefore conclude that counsel could not have been ineffective for failing to seek the exclusion of the drug evidence on the grounds argued by

defendant. Thus, the court properly denied a hearing on the
issue.

*People v. Gordon L. Johnston*, No. 16CA1608 (Colo. App. April 12, 2018) (unpublished)
(ECF No. 11-9 at 6-7).

Mr. Johnston does not argue that the state court's decision with respect to this
ineffective assistance of counsel claim was based on an unreasonable determination of
the facts in light of the evidence presented under § 2254(d)(2).

Mr. Johnston also fails to demonstrate that the state court's decision with respect
to this claim is contrary to *Strickland* under the first prong of § 2254(d)(1).   In other
words, he does not cite any contradictory governing law set forth in Supreme Court
cases or any materially indistinguishable Supreme Court decision that would compel a
different result.   *See House*, 527 F.3d at 1018.

Finally, Mr. Johnston has not demonstrated that the state court's decision with
respect to this claim was an unreasonable application of *Strickland* under the second
prong of § 2254(d)(1).   The state court noted that the fact that the drugs were acquired
from a third party, rather than from Mr. Johnston himself, went to the weight to be given
to the evidence, not its admissibility.   *See* Colo. R. Evid. 402; *cf. Nhan Dao Van*, 681
P.2d at 936.   Because the acquisition of the evidence from a third party did not render
the evidence inadmissible, a reasonable argument exists that counsel was not
ineffective under *Strickland* for failing to move to suppress the evidence on that basis.
*See Redden v. Calbone*, 223 F. App'x 825, 830 (10th Cir. 2007) (trial counsel was not
ineffective for failing to file motion to suppress evidence because alleged flaws in the
chain of custody went to the weight of the evidence, not its admissibility); *Harmon*, 936

F.3d at 1058.   As a result, Mr. Johnston is not entitled to relief on his claim that trial counsel was ineffective for failing to seek the suppression of the drug evidence.

### (2)    Alleged Failure to Object to Audiotape Evidence in Jury Room

Mr. Johnston also asserts that his trial counsel was ineffective "when he failed to object to the court's allowance of the electronic audio tape to be taken into the jury room for their deliberations, after they made a request to 'rehear' it."   (ECF No. 1 at 17).

The Colorado Court of Appeals rejected this claim on the ground that it was refuted by the record:

> We also reject defendant's assertion that a hearing was warranted on whether counsel was ineffective by failure "to object to the court's allowance of the electronic audio tape to be taken into the jury room for their deliberations after they made a request to 'rehear it.'"
>
> Courts generally have discretionary control over jury access to trial exhibits, *Frasco v People*, 165 P.3d 701, 704 (Colo. 2007). Here, before deliberations, defense counsel asked the court "not to give the jury unfettered access" to the recordings. After a lengthy discussion, the court determined that it would admonish the jury not to give the recordings undue emphasis and limit the jury's access to one hour. Later, when the jury requested access to one of the recordings, the court enforced its earlier decision to limit the jury's access to one hour. Therefore, the trial court properly denied a hearing on the issue because the record refutes defendant's claim, as counsel did object to unfettered access to the recordings and acted to ensure that the court exercised its discretion in limiting access to the tapes. *See Frasco*, 165 P.3d at 704; [*People v.*] *McDowell*, 219 P.3d [332]at 340 [Colo. App. 2009].

*Johnston*, No. 16CA1608 (ECF No. 11-9 at 8).

At trial, the following exchange occurred between the court and counsel concerning two audio recordings of the alleged drug transactions:

13

THE COURT:   . . . So does anyone have any particular position on how much access the jury should have to the two audio recordings, which for the record, are 3 and 4?

MR. GARRETT [Prosecution]:   Judge, I think they should have unlimited access. I think unlike a Sungate or police interrogation, these are not testimonial. It's not a situation where someone is being knowingly interviewed by law enforcement. It's not a defendant who is making inculpatory statements as part of a confession. This is part of an undercover sting operation.

While it was being recorded by law enforcement, it was not a formal interview and I don't think it rises to that level. This is simply recordings of the transactions that happen to have a couple of statements by the defendant. I think unfettered access by the jury would be appropriate.

THE COURT:   Mr. Williamson?

MR. WILLIAMSON [Defense Counsel]:   Judge, on line with DeBella, I think the Court needs to craft the right procedure to make sure the jury does not use trial exhibits in a manner that was unfairly prejudicial to the parties.

I'm asking the Court not to give unfettered access to people's Exhibits 3 and 4. I think they can review them, I think they can view them on a state or judicial computer, and if they want to have it back in the jury room or in the courtroom, that they send a request, that Your Honor plays the tape, or your designee, and that the jury be instructed that they cannot stop, pause, rewind. They can listen through them once in their entirety and cannot deliberate while they're watching these videos. I think that's in accordance with DeBella.

And if they want to view it a second time, I think the Court can have us called over and deal with it as such if it is a jury question. So I'm asking for controlled access one time, no deliberations.

(Record (Rec.), Transcript (Tr.) 11/30/2011 at 5-6).   After further argument, the

14

trial court initially determined:

> THE COURT: . . . I'm going to send back the CDs. I'm going to wait for the jury to ask for a recording device. I'm not going to do what the defense wants, that I think is much more – that type of judicial control is much more appropriate when there's much more of a testimonial aspect to either the DVD or the CD.
>
> If and when they ask for a player, I'll send it back to them. And I will also admonish the jury not to give the exhibit undue weight or emphasis with regard to their obligation to consider all of the evidence presented to them. . . . So I'm not going to limit the number of times, but I'm going to alert you that they've asked for it.

*Id.* at 8.   Defense counsel then responded:

> MR. WILLIAMSON:   Judge, I would just – I don't object to the procedure. I am – I do agree with some account of the Court's view of the audio, but I would note at the very end of both of those the government is controlling as they are asking questions, specific questions of [the confidential informant] and it's a question-and-answer form. It's essentially a summary of what's just occurred.
>
> THE COURT:   That's right, I forgot about that. That's true.
>
> MR. WILLIAMSON:   So I'm asking the Court to reconsider its ruling limiting the number of times the jury is able to listen to these tapes.

*Id.* at 9.   After further discussion, the court ruled that the jury would be given the CDs, and if the jurors asked to listen to the CDs they would be permitted to do so for one hour, and could request more time.   *Id.* at 9-11.   During deliberations, the jury did ask to listen to one of the CDs.   (Rec., Tr. 11/30/2011 at 54-58; Exhibits (Exhs.) at 41).   In keeping with its ruling, the court told the jury that it would be given a computer for one hour on which to play the CDs, and that if they wished to listen to the CDs for more than

15

one hour they would need to make a formal request.   (Rec., Tr. 11/30/2011 at 54-58; Exhs. at 41).

Mr. Johnston has failed to show that the Court of Appeals' determination of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   The record reflects that defense counsel argued that the jury should not be given unfettered access to the recordings during deliberations, and should be limited to listening to the recordings once only.   The trial court initially ruled that the jury could have the CDs without any limitation beyond a warning not to give the recordings undue weight.   Defense counsel immediately requested that the court reconsider its ruling, which the court did, ultimately imposing a one-hour time limit.   When the jury did ask to listen to the recordings during deliberations, the court enforced that ruling.   The Court of Appeals' determination that "the record refutes defendant's claim" was not an unreasonable factual determination under 28 U.S.C. § 2254(d)(2).

Mr. Johnston also fails to demonstrate that the state court's decision with respect to this claim is contrary to *Strickland* under the first prong of § 2254(d)(1).   In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.

Nor has Mr. Johnston shown that the state court's decision is an unreasonable application of *Strickland* under the second prong of § 2254(d)(1).   There is no automatic exclusion of recordings, whether testimonial or non-testimonial, from jury

16

deliberations under Colorado law.   *See Frasco*, 165 P.3d at 704–05 (addressing jury

access to witness interview videotape during deliberations and stating that there is no

"deposition-like automatic rule of exclusion for all testimonial exhibits"); *Rael v. People*,

395 P.3d 772, 776 (Colo. 2017) (addressing jury access to crime scene videotape

during deliberations and stating that Colorado and other jurisdictions "have consistently

upheld juror access" to non-testimonial exhibits).   Instead, "control over the use of

exhibits during jury deliberations in criminal proceedings must remain firmly within the

discretion of the court."   *Frasco*, 165 P.3d at 704.   Colorado law provides that the trial

court "has an obligation, much as it does with regard to the admissibility of evidence

generally, to assure that juries are not permitted to use exhibits in a manner that is

unfairly prejudicial to a party."   *Id.*   However, "the precise procedure to be followed to

assure this result must lie within the trial court's sound discretion."   *Id.*   Here, the

Colorado Court of Appeals reasonably concluded that counsel's performance was not

deficient, since counsel argued that the trial court should exercise its discretion by

limiting the jury's access to the recordings.   It was not unreasonable for counsel to

argue that the jury's access to the recordings should be limited, rather than prohibited

altogether, since no automatic rule of exclusion applied.   *See id*; *Rael,* 395 P.3d at 776.

Mr. Johnston thus has failed to show deficient performance as required by *Strickland.*

Mr. Johnston also has failed to demonstrate prejudice under the second prong of

*Strickland*.   The Court of Appeals' denial of this claim was not an unreasonable

application of *Strickland.*

## (3)    Failure to Object to Alleged Prosecutorial Misconduct

Mr. Johnston next contends that his trial counsel was ineffective because he

failed to assert prosecutorial misconduct in connection with a plea offer.   The Colorado

Court of Appeals rejected this claim on the basis that there was no prosecutorial

misconduct, and therefore counsel's failure to assert prosecutorial misconduct did not

constitute deficient performance:

> Defendant next argues that after he waived his
> preliminary hearing in exchange for obtaining a plea offer
> with a maximum sentence of eight years, the prosecution
> withdrew the offer in violation of its agreement when a
> second prosecutor took over the case. He argues that his
> trial counsel should have sought enforcement of the offer for
> an eight-year sentence. He cites *Santobello v. New York*,
> 404 U.S. 257, 261 (1971), and *Cooper v. United States*, 594
> F.2d 12, 16 (4th Cir. 1979), *abrogated on other grounds by
> Mabry v. Johnson*, 467 U.S. 504 (1984), which both
> recognize that due process considerations entitle a
> defendant to fairness in the course of plea negotiations.

> We conclude that the trial court did not err in denying
> defendant a hearing on the issue, because his claims of a
> due process violation are directly refuted by the record. *See
> McDowell*, 219 P.3d at 340. As relevant to this issue, the
> waiver of preliminary hearing, signed by defendant, states
> only "waiver for offer [and] continued negotiations." While the
> signed waiver indicated the existence of a plea offer, the
> phrase "continued negotiations" made clear that talks were
> ongoing, and that no plea agreement had been definitively
> reached in exchange for defendant's waiver of the
> preliminary hearing. Therefore, there was nothing requiring
> the prosecution to hold open the plea offer indefinitely.

> Notably, defendant signed the waiver of preliminary
> hearing indicating ongoing negotiations on May 23, 2011.
> More than a month later, on June 30, 2011, defendant
> entered a plea of not guilty, indicating that defendant had not
> accepted any plea offer up to that point. And when
> defendant pleaded not guilty, the first prosecutor was still

18

representing the People. Defendant alleges that prosecutorial misconduct only occurred when the second prosecutor took over the case and withdrew the offer. Therefore, because the first prosecutor was still representing the People when defendant pleaded not guilty, the record indicates that defendant had, at a minimum, a month to accept the plea offer that was available to him, but did not do so.

We therefore conclude that the record refutes defendant's contention that there was a due process violation when the second prosecutor withdrew the plea offer. Contrary to defendant's claims, the record suggests that the prosecution upheld its end of the bargain. The alleged offer was held open for at least a month, but defendant did not accept it, and nothing suggests that the prosecution was required to hold open an offer indefinitely. This was not a scenario such as in *People v. Macrander*, 756 P.2d 356, 358 (Colo. 1988), cited by defendant, where the prosecution made a clear offer on the record laying out the specific terms of a plea and making an explicit promise not to file additional charges in exchange for the waiver of a preliminary hearing. Instead, the record here indicates that negotiations were merely ongoing.

Because we conclude that the record refutes defendant's claims of prosecutorial misconduct, trial counsel's performance could not have been deficient for failure to make such claims, and the trial court did not err in denying a hearing.

*Johnston*, No. 16CA1608 (ECF No. 11-9 at 9-11).

Mr. Johnston contends in his Reply that the prosecution's withdrawal of the plea offer constituted misconduct because "it was agreed upon that the offer was to remain open until the beginning of trial." (ECF No. 21 at 4). He asserts in his Application that "the district attorney offered defendant a plea agreement of eight years [capped] if he would plea to one amended count of an undetermined class three felony (guilty plea to be entered any time before trial would begin), all other counts would be dismissed with

prejudice." (ECF No. 1 at 5). However, he provides no support in the record for his bare assertion that the plea offer was to be held open until trial, or for any specific period of time. The record reflects that on May 23, 2011, Mr. Johnston signed a Waiver of Preliminary Hearing in which he waived his right to a preliminary hearing in exchange for an "offer & continued negotiations." (Rec., Court File at 34). Mr. Johnston entered a plea of not guilty over a month later, on June 30, 2011, which indicates that he had not accepted any plea offer as of that date. The language in the waiver document did not require that the prosecution hold open a plea offer for any specific period of time, and the Court has located nothing in the record imposing such a requirement. While Mr. Johnston characterizes this claim as involving a "breach of contractual obligation" by the prosecution (*see* ECF No. 1 at 4-5), nothing in the record indicates that the parties entered into an agreement for anything other than an offer and continued negotiations for an unspecified period of time in exchange for Mr. Johnston's waiver of a preliminary hearing.

Although Mr. Johnston has submitted a document which he asserts is an email from the prosecution to his trial counsel concerning a plea offer (*see* ECF No. 5 at 3), the document cannot be considered in this habeas action because it is not part of the state court record. *See Cullen*, 563 U.S. at 181; *Hooks* 689 F.3d at 1163. Even if it were properly considered, the email only inquires if Mr. Johnston is willing to "waive for the offer," and does not evidence an agreement hold an offer open for a specific period of time. (ECF No. 5 at 3). Again, the record indicates that Mr. Johnston waived the preliminary hearing on May 23 but had not accepted an offer as of at least June 30.

Mr. Johnston did not argue in the state courts, and does not argue here, that an enforceable plea agreement was at some point definitively reached and then subsequently breached by the prosecution; rather, he contends that the plea offer, which he never accepted, was withdrawn prematurely. The Colorado Court of Appeals reasonably determined that this contention is refuted by the record.

As such, the Court of Appeals reasonably concluded that the prosecutor did not engage in misconduct by withdrawing the plea offer, and that trial counsel's performance thus could not have been deficient based on a failure to assert prosecutorial misconduct with respect to the plea offer.

Ultimately, Mr. Johnston is not entitled to relief with respect to this ineffective assistance of counsel claim because he fails to demonstrate that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### (4) Failure to Seek Recusal of Prosecutor

Mr. Johnston also contends that his trial counsel was ineffective for failing to seek recusal of the district attorney because the alleged misconduct regarding the retraction of the plea offer made the prosecutor a witness in the case. The Colorado Court of Appeals rejected the claim, as follows:

> Finally, we reject defendant's contention that trial counsel was ineffective for failing to seek the recusal of the district attorney under section 20-1-107, C.R.S. 2017. That section provides that a district attorney may be disqualified "upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would

21

render it unlikely that the defendant would receive a fair trial," § 20-1-107(2).

>    According to defendant, the district attorney was subject to disqualification for prosecutorial misconduct surrounding the alleged retracted plea offer because the alleged misconduct made the prosecutor a witness in the case. But we have found nothing to suggest that such misconduct would make the prosecutor a witness. And defendant has not alleged any disqualifying personal or financial interest on the part of the district attorney, nor elaborated how "special circumstances" would make it unlikely that defendant would receive a fair trial. *See id.* Therefore, we conclude that the court properly denied a hearing on this issue because defendant's claims were conclusory, vague, and lacking in detail. [*People v.*] *Osorio*, 170 P.3d [796] at 799 [Colo. App. 2007].

*Johnston*, No. 16CA1608 (ECF No. 11-9 at 11-12).

Mr. Johnston fails to demonstrate that the decision of the Colorado Court of Appeals with respect to this claim was contrary to or an unreasonable application of clearly established law, or an unreasonable determination of the facts in light of the evidence. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. He also fails to demonstrate that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. It is not unreasonable to reject conclusory allegations that counsel was ineffective because such allegations are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). Mr. Johnston failed to articulate why or how the prosecutor's alleged

misconduct with regard to the plea agreement rendered the prosecutor a witness in his criminal case, and thus the state court reasonably rejected the claim. Mr. Johnston is not entitled to relief on this claim.

**B.      Claim Four**

In Claim Four, Mr. Johnston asserts that his Sixth Amendment right to effective assistance of counsel was violated when his appellate counsel failed to challenge the sufficiency of the evidence and failed to allege prosecutorial misconduct. (ECF No. 1 at 18-19).

The Colorado Court of Appeals rejected this claim, concluding that there was nothing to indicate that the appellate issues Mr. Johnston proposed were more likely to succeed than the issues his appellate counsel raised:

> We next consider and reject defendant's argument that a hearing was required on whether appellate counsel was ineffective for failure to bring claims of insufficient evidence and prosecutorial misconduct.
>
> Claims of ineffective assistance of appellate counsel may stem from allegations that counsel failed to perfect an appeal or, having perfected the appeal, counsel failed to present the case effectively by overlooking a meritorious argument that was more likely to succeed than the argument presented." *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007). But appellate counsel is not required to raise every nonfrivolous issue. *Id.* "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (citation omitted).
>
> Appellate counsel challenged the jury instructions, the sufficiency of the evidence used for the habitual criminal sentencing, the constitutionality of the habitual criminal proceeding and the proportionality of defendant's sentence. *See Johnston*, No. 12CA0893.

There is nothing to indicate that defendant's proposed issues were stronger or had a better chance of prevailing than the claims which appellate counsel raised; our review of defendant's assertions indicates the contrary. Therefore, the court did not err in denying defendant's motion without a hearing. *See Trujillo*, 169 P.3d at 238.

*Johnston*, No. 16CA1608 (ECF No. 11-9 at 12-14).

The *Strickland* standards apply to Mr. Johnston's claim that his counsel on direct appeal was ineffective. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). The Tenth Circuit has described the proper analysis as follows:

When, as here, a habeas petitioner's Sixth Amendment claim is based upon appellate counsel's failure to raise a particular issue, the Supreme Court has recognized that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Indeed, the winnowing out of weaker arguments so that counsel may focus the court's attention on those more likely to prevail is the hallmark of effective advocacy.

Nevertheless, in certain circumstances, appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims, the court must consider the merits of the omitted issue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance. On the other hand, if the omitted issue has merit but is not so compelling, we must examine the issue in relation to the rest of the appeal. Habeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue.

*Malicoat v. Mullin*, 426 F.3d 1241, 1248-49 (10th Cir. 2005) (internal citations and

quotation marks omitted). "[O]f course, if the issue is meritless, its omission will not constitute deficient performance." *Cargle*, 317 F.3d at 1202.

The Colorado Court of Appeals rejected Mr. Johnston's claim that direct appeal counsel was ineffective because there was "nothing to indicate that [Mr. Johnston's] proposed issues were stronger or had a better chance of prevailing than the claims which appellate counsel raised," and its review of Mr. Johnston's assertions in fact indicated the contrary. (ECF No. 11-9 at 13-14). Mr. Johnston fails to demonstrate or even argue that the state court's rejection of this ineffective assistance of counsel claim was contrary to clearly established federal law under § 2254(d)(1), or that it was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). He also fails to demonstrate that the state court's ruling was an unreasonable application of clearly established federal law under § 2254(d)(1). It was reasonable for the state court to conclude that the issue of alleged prosecutorial misconduct was not more likely to succeed than the issues raised by counsel on appeal, since the prosecutorial misconduct issue lacked merit. *Cargle*, 317 F.3d at 1202. Mr. Johnston further has failed to explain why a "sufficiency of the evidence" argument was more likely to prevail than the issues that appellate counsel actually raised. *See Malicoat*, 426 F.3d at 1248. Mr. Johnston cannot demonstrate that counsel's failure to assert these arguments on direct appeal constituted deficient performance, or that he suffered any prejudice, under *Strickland*'s deferential standard. Therefore, Mr. Johnston is not entitled to relief with respect to Claim Four.

## IV. Conclusion

In summary, the Court finds that Mr. Johnston is not entitled to relief on any of his remaining claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED December 24, 2019.

BY THE COURT:

_____

R. BROOKE JACKSON
United States District Judge